**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 15 2012, 8:52 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DALE DOUGLAS PERKINS, JR.,    )
    )
    Appellant-Defendant,    )
    )
    vs.    )    No. 16A01-1112-CR-603
    )
STATE OF INDIANA,    )
    )
    Appellee-Plaintiff.    )

APPEAL FROM THE DECATUR SUPERIOR COURT
The Honorable Matthew D. Bailey, Judge
Cause No. 16D01-1010-FC-431

**June 15, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**GARRARD, Senior Judge**

Dale Douglas Perkins, Jr., appeals the sentence imposed upon his convictions of operating a motor vehicle while intoxicated, a Class D felony, Ind. Code § 9-30-5-3 (2008), and resisting law enforcement, a Class D felony, Ind. Code § 35-44-3-3 (2010). We affirm.

On the evening of October 11, 2010, Teresa Newell was walking near her home in Greensburg when Perkins drove up in a white van and convinced her to enter. Meanwhile, the Greensburg Police Department had received a report of a white van being driven in a reckless manner. Lieutenant Larry Dance spotted Perkins' van shortly after Newell climbed inside. Dance was driving a fully marked patrol car, and when Perkins noticed Dance, Perkins drove away at a high rate of speed. Dance activated his emergency lights, but Perkins accelerated as he fled. As they drove through Greensburg, at times Perkins drove approximately sixty miles per hour in a thirty mile per hour zone. Newell begged Perkins to stop, but Perkins continued to flee.

The chase came to an end when the van collided with railroad tracks. Perkins jumped out and ran away, but the police caught him. Perkins had a strong odor of alcoholic beverages on his person, slurred speech, bloodshot eyes, and difficulty walking. Newell, who had remained in the van, had injuries to her head and face as a result of the collision. Later, the police obtained a search warrant for a blood sample from Perkins, and the test results showed that he had a blood alcohol content of 0.27%.

The State charged Perkins with operating a motor vehicle after a lifetime suspension, a Class C felony; criminal confinement, a Class C felony; resisting law enforcement, a Class D felony; operating a motor vehicle while intoxicated, a Class D

2

felony; and being a habitual substance offender. At Perkins' request, the trial court ordered two psychiatrists to evaluate Perkins' competency, and they determined that he was competent to stand trial. Eventually, Perkins pleaded guilty but mentally ill to operating a motor vehicle while intoxicated as a Class D felony and resisting law enforcement as a Class D felony. In exchange, the State dismissed the remaining charges. The trial court sentenced Perkins to three years on each conviction, to be served consecutively, for a total sentence of six years. This appeal followed.

Perkins raises one issue, which we expand and restate as:

I.     Whether the trial court abused its discretion by ordering Perkins to serve consecutive sentences.

II.    Whether Perkins' sentence is inappropriate.

## I. SENTENCING DISCRETION

In general, sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* A trial court abuses its discretion when it: (1) fails to enter a sentencing statement; (2) enters a sentencing statement that includes reasons that are unsupported by the record; (3) enters a sentencing statement that omits reasons that are clearly supported by the record and advanced for consideration; or (4) enters a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490-91.

Here, Perkins argues that the trial court abused its discretion by ordering him to serve consecutive sentences because his "crimes are intertwined." Appellant's Br. pp. 10-11. In order to impose consecutive sentences, the trial court must find at least one aggravating circumstance. *Frentz v. State*, 875 N.E.2d 453, 470 (Ind. Ct. App. 2007), *trans. denied*. In this case, the trial court determined that Perkins' extensive criminal history and his being on parole at the time the crimes were committed were aggravating factors that justified consecutive sentences. These factors, which Perkins does not challenge, are sufficient to support consecutive sentences.

To the extent that Perkins argues that his aggregate sentence must be reduced because his crimes constitute an "episode of criminal conduct" pursuant to Indiana Code section 35-50-1-2(c) (2008), we note that resisting law enforcement as a felony is a "crime of violence" for purposes of that statute. Therefore, the limits upon consecutive aggregate sentencing for an episode of criminal conduct do not apply here. *See id.* We find no abuse of discretion.

## II. APPROPRIATENESS OF SENTENCE

Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court. *Anglemyer*, 868 N.E.2d at 491. This discretionary authority is implemented through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In

4

making this determination, we may look to any factors appearing in the record. *Calvert v. State*, 930 N.E.2d 633, 643 (Ind. Ct. App. 2010). The defendant has the burden of persuading the appellate court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

To assess the appropriateness of the sentence, we look first to the statutory range established for the class of the offenses. Here, the advisory sentence for a Class D felony is one and a half years, the shortest sentence is six months, and the longest sentence is three years. Ind. Code § 35-50-2-7 (2005). Perkins received three years for each conviction, to be served consecutively.

Next, we look to the nature of the offenses and the character of the offender. Our review here of the nature of Perkins' offenses shows that he fled from Dance at high speed. During the chase, Perkins drove at almost double the speed limit, endangering other drivers as well as pedestrians. Furthermore, Perkins ignored Newell's repeated requests to stop and let her out. Instead, he continued to flee and wrecked his van, causing injuries to Newell. Furthermore, after the accident Perkins did not seek aid for Newell but instead abandoned her and ran away.

Our review here of Perkins' character shows that he has a lengthy criminal record. Perkins, who was thirty-eight years old at sentencing, has six Indiana misdemeanor convictions for possession of alcohol or public intoxication. He also has three prior Indiana convictions for operating a motor vehicle while intoxicated, one as a misdemeanor and two as felonies. Perkins also has a prior Indiana conviction for resisting law enforcement as a felony. In addition, he has a criminal history in Florida,

5

including burglary, theft, attempted robbery, and fleeing from law enforcement. Perkins keeps committing the same offenses, demonstrating that he has not learned that when he drinks alcohol he will commit unlawful acts. It is also notable that Perkins had been released from incarceration only one month prior to committing the instant offenses and was also on parole at the time. He has been on probation in Indiana six times and has had his probation revoked three times.

The trial court determined that Perkins' mental illness was a mitigating factor. Perkins argues that his sentence is inappropriate because his mental illness caused him to commit these crimes. Courts must consider several factors in determining what, if any, mitigating weight to give to any evidence of a defendant's mental illness. *Krempetz v. State*, 872 N.E.2d 605, 615 (Ind. 2007). The factors include: (1) the extent of the defendant's inability to control his behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime. *Id.*

The two psychiatrists that the court designated to evaluate Perkins both concluded that he suffers from psychotic disorder. Perkins asserts that his criminal record results from his inability to control his behavior due to his psychosis. However, we note, as did the trial court, that Perkins was incarcerated in the county jail for fourteen months following his arrest in this case, and during that time he had a clean discipline record despite a lack of access to medication. By his own admission, Perkins did not get into fights with fellow prisoners, which he has done frequently in the past. Thus, Perkins has some ability to control his behavior despite his mental illness.

6

Regarding overall limitations on functioning, Perkins asserted that he is unable to maintain a job for any length of time. At the time of his current offenses, he was homeless. However, at sentencing Perkins presented a letter from Cory Julian, in which Julian stated that he has a job waiting for Perkins when he is released. In addition, a family friend stated that Perkins will live with her upon his release.

Turning to the duration of his mental illness, Perkins was diagnosed with schizophrenia in his youth. He has repeatedly heard voices in his head and has experienced feelings of paranoia since the age of eight or ten.

Finally, as to the extent of any nexus between Perkins' mental illness and his commission of a crime, Perkins stated that his symptoms were very strong that day. However, in addition to his symptoms, Perkins noted that he was under stress because his "father was almost in his death bed." Tr. p. 53. In addition, Perkins' family friend testified that the cause of Perkins' criminal activity is that he "just falls into the wrong path when he's drinking." *Id.* at 61. Finally, as is noted above, after his arrest Perkins was able to stay out of trouble in jail, without his medications, for fourteen months. We conclude that the nexus between his mental illness and the instant offenses is not so strong as to require a different result. *See Scott v. State*, 840 N.E.2d 376, 384 (Ind. Ct. App. 2006) (determining that Scott was able to control his behavior despite a lengthy criminal record and failed to establish a nexus between his mental illness and his crimes), *trans. denied*. Therefore, Perkins' mental illness does not render his sentence inappropriate, particularly in light of the manner in which Perkins committed these offenses.

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

KIRSCH, J., and BARNES, J., concur.